IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
**Plaintiff**

**v.**                                             **CRIMINAL NO. 03-294(DRD)**

**LUIS DANIEL ROSARIO-RIVAS [1]**
**JESUS POMALES-PIZARRO [3]**
**LEONARDO RIVERA [7]**
**JOSE A. RIVERA CALDERON [8]**

## OPINION AND ORDER

At the close of this case, Defendants have renewed several arguments by filing their respective Rule 29(c), Federal Rule of Criminal Procedure Motions, reiterated previous trial objections, and initiated new petitions for acquittal. The Court is prepared to address the issues raised in the Defendants' Rule 29 Motions and precipitate a conclusion to these proceedings. For the reasons stated below, Defendants' Rule 29 Motions are hereby **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

**THE CHARGES**

On October 22, 2003, the instant defendants were indicted with knowingly, intentionally, and unlawfully to conspire, combine, confederate, and agree together and with each other and with other persons, to commit an offense against the United States, that is, to posses with intent to distribute, and distribute, narcotic controlled substances, to wit: five (5) kilograms or more of cocaine, and/or fifty (50) grams or more of cocaine base ("crack"), and/or one (1) kilogram or more of a mixture or a substance containing a detectable amount of heroin; and/or a detectable amount of marihuana, in violation of 21U.S.C. §§ 841(a)(1), and 841(b)(1)(A). (*See* Indictment, Docket Entry No. 2). The indictment alleged that the conspiracy began on or about 1995 until the date of the indictment.

On December 7, 2004, a Superseding Indictment was filed specifying that the amount of marihuana in the conspiracy was one hundred (100) kilograms of marihuana hence the conspiracy violated 21U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; that the conspiracy was initiated on or about 1995 until October 31, 2003; and to add overt acts performed by all the co-defendants in furtherance

of the conspiracy.[1] (*See* Superseding Indictment, Docket Entry No. 240). The Superseding Indictment charged that the object of the conspiracy was to possess with the intent of distribute and distribute cocaine, cocaine base ("crack"), heroin, and marihuana at different distribution points in and around the Los Alamos Housing Project, in Guaynabo, Puerto Rico, for significant financial gain and profit.

On March 14, 2005, the Jury in this case returned guilty verdicts with respect to Count I against all co-defendants. Shortly thereafter the co-defendants filed their respective motions for acquittal at Docket Entry Nos. 425, 427, 428, and 430. The Government filed its opposition at Docket No. 437. The Court proceeds to address the present controversy as a request seeking acquittal challenging the lack of evidence on the record particularly sustaining that co-defendants were co-participants in only one conspiracy as opposed to multiple conspiracies as generally alleged by co-defendants.

**LEGAL FRAMEWORK**

**A. THE SUFFICIENCY OF EVIDENCE STANDARD**

The First Circuit has been clear as to the legal standard to be used by the Court when considering Rule 29 motions regarding challenges to the sufficiency of the evidence presented by the Government. "If the evidence presented, taken in the light most flattering to the prosecution, together with all reasonable inferences favorable to it, permits a rational jury to find each essential element of the crime charge beyond a reasonable doubt, then the evidence is legally sufficient." United States v. Olbres, 61 F.3d 967, 970 (1st Cir.), *cert. denied*, 516 U.S. 991 (1995). *See also* Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); United States v. Gifford, 17 F.3d 462, 467 (1st Cir. 1994); United States v. Castro-Lara, 970 F.2d 976, 979 (1st Cir. 1992), *cert. denied*, 508 U.S. 962, 113 S.Ct. 2935, 124 L.Ed.2d 684 (1993); United States v. Hernandez, 146 F.3d 30, 32 (1st Cir. 1998).

When examining the sufficiency of the evidence presented at trial, the court shall not evaluate credibility; all credibility issues must necessarily favor the verdict. United States v. Garcia, 983 F.2d 1160, 1163-64 (1st Cir. 1993). "In evaluating sufficiency, both direct and circumstantial evidence are accorded weight." Olbres, 61 F.3d at 970. *See also* United States v. O'Brien, 14 F.3d 703, 706 (1st

---

[1] The Government further charged co-defendant Leonardo Rivera with possession of a machine gun as defined in 26 U.S.C. §5845(b), in violation of 18 U.S.C. §922(o)(1). *See* Count II, Superseding Indictment, Docket No. 240. However, Count II is not considered for purposes of the instant Rule 29 motion.

Cir. 1994). ("[T]he criminal law does not place a special premium on direct evidence."). "[T]he prosecution may satisfy its burden of proof by direct evidence, circumstantial evidence or any combination of the two." United States v. Herenandez, 146 F.3d 30, 33 (1st Cir. 1998). In fact, the evidenced utilized to convict "may be entirely circumstantial ..." United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir. 1991). *See* Olbres, 61 F.3d at 970. ("When, as now, a criminal defendant mounts a sufficiency challenge, all the evidence, direct and circumstantial, is to be viewed from the government's coign of vantage. Thus, the trial judge must resolve all evidentiary conflicts and credibility questions in the prosecution's favor; and, moreover, as among competing inferences, two or more of which are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt."); United States v. Taylor, 54 F.3d 967, 974 (1st Cir. 1995); United States v. Rothrock, 806 F.2d 318, 320 (1st Cir. 1986).

The Court is mindful that "if the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence [the] court must reverse the conviction." United States v. Flores-Rivera, 56 F.3d 319, 323 (1st Cir. 1995). Yet, so long as the evidence taken as a whole, warrants a judgment of conviction, the Court "need not rule out other hypotheses more congenial to a finding of innocence.'" Olbres, 61 F.3d at 970 *citing* Gifford, 17 F.3d at 467.

## B. SINGLE DRUG CONSPIRACY

To establish that the defendant is guilty on a conspiracy charge, the government must prove beyond a reasonable doubt that "an agreement existed to commit the underlying substantive offense, and that the defendant elected to join the agreement, intending that the underlying offense be committed." United States v. Medina Martinez, 396 F.3d 1, 5 (1st Cir. 2005), *cert. denied* __ U.S. __, 125 S.Ct. 1955 (2005). *See also*, United States v. Gomez, 255 F.3d 31, 35 (1st Cir.2001); United States v. Barnes, 244 F.3d 172, 175 (1st Cir.2001); United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir.1993).[2] Consequently, a number of factors shall be considered when determining whether the evidence presented at trial establishes a single conspiracy, to wit: "1) the existence of a common

---

[2] It has been long established that for a violation under 21 U.S.C. §846, the Government need not prove the commission of any overt act in furtherance of the conspiracy. U.S. v. Fornia-Castillo, 408 F.3d 52, 69 (1st Cir. 2005)(*citing* United States v. Shabani, 513 U.S. 10, 15, 115 S.Ct. 382 (1994)). Consequently, no agreement amongst defendants must be proven to secure a conviction for a substantive drug offense under 21 U.S.C. §841(a)(1) since it is known that "' conspiracy to commit a crime is not the same offense as the substantive crime for double jeopardy purposes', U.S. v. Lanoue, 137 F.3d 656, 662 (1st Cir. 1998), because 'the agreement to do the act is distinct from the [completed] act itself'". U.S. v. Fornia-Castillo, 408 F.3d at 69.

purpose, such as selling drug for profit, 2) the interdependency of various elements in the plan, such as whether the success of an individual's own drug transactions depends on the health and success of the drug trafficking network that supplies him, and 3) the degree of overlap among the participants". United States v. Soto-Beniquez, 356 F.3d 1, 18-19 (1st Cir. 2003)(citations omitted). The "overlap" requirement can be satisfied by the pervasive involvement of a single one conspirator. U.S. v. Wilson, 116 F.3d 1066, 1076 (5th Cir. 1997). The Court must look at the totality of the evidence to see if "it supports the finding of a single conspiracy". United States v. Rivera-Ruiz, 244 F.3d 263, 268 (1st Cir. 2001). *See*, United States v. Gomez-Pabon, 911 F.2d 847, 853 (1st Cir.1990)("[P]roof [of membership in a conspiracy] may consist of circumstantial evidence, including inferences from surrounding circumstances, such as acts committed by the defendant that furthered the conspiracy's purposes.").

"The conspiratorial agreement need not be explicit and the proof thereof need not be direct." Gomez, 255 F.3d at 35; *see also* Sepulveda, 15 F.3d at 1173 (explaining that "the agreement may be express or tacit and may be proved by direct or circumstantial evidence"). Proof of defendant's involvement in the conspiracy "may consist of indirect evidence, including reasonable inferences drawn from attendant circumstances." United States v. Echeverri, 982 F.2d 675, 679 (1st Cir. 1993). "In the last analysis, criminal juries are not expected to ignore what is perfectly obvious". Id., (citations omitted).

As stated previously, in determining whether a single conspiracy exists, the Court must consider whether the participants shared a common goal. United States v. Rivera-Ruiz, 244 F.3d 263, 268 (1st Cir.2001). "The jury may infer an agreement circumstantially by evidence of, *inter alia,* a common purpose ..., overlap of participants, and interdependence of elements in the overall plan. United States v. Martinez-Medina, 279 F.3d 105, 113-14 (1st Cir.2002). Consequently, it has been held that ordinarily it is a matter of fact for the jury's determination, subject to review only for evidentiary sufficiency, whether the evidence presented at trial is indicative of a single conspiracy, multiple conspiracies, or no conspiracy. United States v. Wihbey, 75 F.3d 761, 774 (1st Cir. 1996).

Further, in order to determine whether a defendant has joined a drug conspiracy, said defendant must agree with others to advance the object of said conspiracy. Consequently, advancing the object of the conspiracy may entail performing several "ancillary functions such as processing and cooking drugs, procuring weapons, collecting monies, enforcing discipline, chastising rivals, accounting and the like, as long as such actions are performed with the aim of furthering the

conspiracy". United States v. Soto-Beniquez, 356 F.3d at 18(citations omitted). Likewise, "to hold that defendants have 'joined' a conspiracy, there must be sufficient evidence both that they knew about the conspiracy and hat they knew the ancillary service would advance the conspiracy". Id.

Finally, although the Government is not required to show that an overt act was committed by one conspirator at least to accomplish the goal of the conspiracy, U.S. v. Shabani, 513 U.S. 10, 15, 115 S.Ct. 382 (1994), the record is fraught with overt acts performed by the co-defendants in furtherance of the conspiracy. Bearing in mind, the above recited standards, we turn to the evidence contained in the record.

## LEGAL ANALYSIS

The Court proceeds with the applicable standard of review hence the trial record must be examined to determine the sufficiency of the evidence. At the outset the Court notes that the Government indicted the co-defendants with the conspiracy of possessing with intent to distribute and distribute heroine, cocaine, cocaine base and marihuana at different drug points im Los Alamos Housing Project in Guaynabo, Puerto Rico from 1995 to October 2003 for financial gain and profit.

During Jury Trial the evidence brought forth by the Government showed that the place where the drugs were sold within the Los Alamos Housing was a place called "La Placita" wherein multiple drug points operated from 1995 through 2003 selling cocaine, heroin, crack cocaine, and marihuana. (See January 26, 2005 Transcript, p. 102). Each and every drug point operated 7 day a week, twenty four hours a day and the operation's schedule was divided amongst three (3) shifts. (See January 26, 2005 Transcript, p. 102). Further, it was shown that each of the drug points had an organization comprised of owners, runners, sellers and enforcers. (See January 27, 2005 Transcript, p. 82).

As to the different positions held within the organization, the Government's evidence showed that the drug point's owners at different times from 1995 through 2003, that is, during the duration of the conspiracy were: Georgie, Manolo, Eddie, Luis, Pajaro, Fide, Pingui, Armando, Manguelo, Georgie, Manolito, Danny, Luis, (See January 24, 2005 Transcript, p. 32, 84).

Likewise, as to runners' positions, the evidence showed that during the course of the conspiracy Leonardo Rivera was a heroin runner for Luis Rodriguez and a cocaine runner for Armando Valdes. (See January 27, 2005 Transcript, p. 95).

As to the organization's enforcers, the evidence proved that co-defendant Luis Daniel Rosario Rivas was his own enforcer and, while enforcing for co-conspirator Manuelito Cañuelas,

executed co-conspirator Armando Valdes. Furthermore, the Government also proved that there were weapons possessed in furtherance of the conspiracy by co-defendant Leonardo Rivera, and coconspirators Georgie Cañuelas, Emmanuel Cañuelas. (See January 27, 2005 Transcript, p. 133-136).

Further, the evidence submitted by the Government proved that there was a common goal amongst the conspirators. The Government submitted various videotapes and testimonial evidence reflecting normal day to day operations at the drug point. (See February 3, 2005 Transcript, p. 104). Moreover, the evidence showed that the owners had periodic meetings wherein discussions were held to agree upon who could become a point owner and authority was hence granted to own/operate a drug point (similar to granting a franchise to sell drugs).(See January 24, 2005 Transcript, p. 108-109); agreements were held as to disciplining those persons performing drug sales without the authority from the points' owners (See January 24, 2005 Transcript, p. 108-109); the drug's price was controlled and set by the owners, (See January 24, 2005 Transcript, p. 75-78, January 27, 2005 Transcript, p. 56-57); the owners agreed on the color codes to be used to identify the drugs to be sold at the drug points,(See January 24, 2005 Transcript, p. 107-109).

Further, the Court received testimony detailing how the owners agreed amongst themselves to provide security and protective measures to be implemented at the drug points. (See January 27, 2005 Transcript, p. 35-37). The protective measures included but were not limited on how to deal with robberies within the housing project, (See January 27, 2005 Transcript, p. 25-34); further, communications amongst the coconspirators were coordinated relating to the flow of vehicles in and out of the project, (See January 27, 2005 Transcript, p. 36, 82-83); and disciplining those who did not follow the rules set by the drug point owners at their meetings, (See January 27, 2005 Transcript, p. 60-62). Furthermore, the record reflects that co-defendants Jesus Pomales Pizarro and Leonardo Rivera purchased weapons and stashed them into vehicles and apartments in benefit of the conspiracy.(See January 27, 2005 Transcript, p. 35-37). Further, co-defendant Luis Daniel Rosario Rivas in conjunction with Raphael purchased firearms in benefit of the conspiracy which were kept in secret places for the security of all the drug distribution organization. (See January 27, 2005 Transcript, p. 133-136).

Further, evidence relating to the overlapping requirement was admitted by the Court showing that Manguelo was a crack cocaine and heroin runner for Luis Besito and Armando besides being an armed guard for Luis Besito's drug point; Papote was a cocaine seller and a runner for

Georgie Cañuelas, Naldo was a cocaine and heroine runner for Luis Besito and Armando and also cooked crack cocaine for Luis Besito; Manguelo was drug point owner at some time and was a runner for Luis Besito and Naldo, and also was an armed guard for said drug points, (See January 27, 2005 Transcript p. 90-95). Further defendant Leonardo Rivera besides being an owner of a marihuana point was responsible for stashing weapons for the protection of the drug points within Los Alamos residential project. (See January 27, 2005 Transcript, p. 35-37, 125-126); Rivera also performed as a runner for coconspirators Armando Valdes and Luis Rodriguez Gonzalez, (See January 27, 2005 Transcript, p. 94-95); prior thereto he cooked crack cocaine for co-defendant Jesus Pomales Pizarro (See January 27, 2005 Transcript, p. 94); he was also a heroin runner for Luis Rodriguez, a cocaine runner for Armando Valdes; a crack cocaine runner for co-defendant Jesus Pomales Pizarro. (See January 27, 2005 Transcript, p. 94-95). Furthermore, co-defendant Luis Daniel Rosario Rivas was a point owner and also performed as his own enforcer and also enforced for coconspirator Georgie Cañuelas participating in the murder of Armando Valdes, (See January 24, 2005 Transcript, p. 105-109).

Finally, the Government presented testimonial evidence showing overt acts in furtherance of the conspiracy and supporting the verdict that there existed only one conspiracy that lasted from 1995 through 2003. For instance, evidence showing that the murder of Armando Valdes Medina. He was murdered because he was using a drug brand identifier for selling crack cocaine for which he was not authorized and was previously admonished as to this by the points' owners in a meeting amongst them. (See January 24, 2005 Transcript, p. 98-109; January 28, 2005 Transcript, p. 29-70). Likewise, the murder of Wilfredo Sierra was executed by co-defendants Jesus Rafael Rivera Santiago and Luis Daniel Rosario Rivas because the victim had the intention to take over other co-defendants' drug points.(See January 24, 2005 Transcript, p. 98-109; January 28, 2005 Transcript, p. 29-70).

## CONCLUSIONS

The Court harbors no doubt that the evidence as presented by the Government proves beyond reasonable doubt the guilty verdict entered by the Jury finding that the co-defendants committed the crime of conspiracy as charged in the Indictment. The Court explains.

Firstly, it is known that the determination whether a single conspiracy existed is a question

of fact to be answered by the jury.[3] *See generally*, United States v. Medina-Martinez, 396 F.3d at 5. Consequently, on appeal the Court "defer[s], with reason, to inferences formulated by the jury in the light of its collective understanding of human behavior in the circumstances revealed by the evidence", Id.,(*citing* United States v. Guerrero, 114 F.3d 332, 339 (1st Cir. 1997)), and the Court's inquiry is geared toward determining that "the guilty verdict finds support in a 'plausible rendition of the record'". Id, *citing* Echeverri, 982 F.2d at 677.

It is well settled that in determining whether a single conspiracy existed the Court's role is to determine whether the participants shared a common goal. United States v. Rivera-Ruiz, 244 F.3d at 268. Hence an agreement may be inferred circumstantially by evidence of, *inter alia*, a common purpose, overlap of participants, and interdependence of elements in the overall plan. United States v. Martinez-Medina, 279 F.3d 113-114. Therefore, the Court proceeds to examine the evidence on the record to determine whether the threshold has been met.

The record is replete with evidence showing that the co-defendants shared a common purpose of selling drugs at Los Alamos Housing Project in Guaynabo, P.R., and the interdependence of the narcotics distribution activities amongst the participants. As stated previously, the Court notes that in order to sell drugs in the Los Alamos housing project the interested party had to have the authorization to sell from the drug point owners. Although it is known that a tacit understanding amongst the coconspirators is enough to establish a conspiracy, in the instant case, the evidence showed that explicit agreements were held by the coconspirators as to how the operation was to be

---

[3] The Court provided an instruction covering multiple as opposed to a single conspiracy. In said instruction the Court set forth the criteria to be used in determining a single vs. a multiple conspiracy and the instruction required that should the jury "believe that the evidence shows [sic.] that any defendant was a member of a conspiracy different from the one charged in the indictment, then it is your duty to find him not guilty". Jury Instruction 16(F) reads as follow:

**MULTIPLE CONSPIRACIES**

You must determine whether the conspiracy charged in the indictment existed, and, if it did, who its members were.

In order for you to determine whether or not this case involves a single conspiracy you are to consider several non exhaustive factors including (1) the existence of a common purpose, (2) the interdependency of various elements in the plan, and (3) the degree of overlap among the participants. It is the totality of the evidence that determines your finding of a single conspiracy.
You as jurors are to determine whether the evidence presented in this case showed one "overall" conspiracy, or separate conspiracies, and if you believe the evidence shows that any defendant was a member of a conspiracy different from the one charged in the indictment, then it is your duty to find him not guilty.

run in an orderly fashion for the benefit of all the participants hence joining the agreement intending to commit the underlying narcotics distribution offense. United States v. Gomez, 255 F.3d at 35. Notwithstanding, the fact that individual dealers sold in competition with one and other, does not preclude a finding of a single conspiracy. U.S. v. Wilson, 116 F.3d at 1075(*citing* U.S. v. Ross, 58 F.3d 154, 158 (5th Cir.); *cert. denied* 516 U.S. 954, 116 S.Ct. 404 (1995).

The evidence presented at trial showed that meetings were held amongst the drug point owners to establish the rules to be followed in order to effectively run the drug selling operation within Los Alamos. These drug point owners were the persons who established the price of the drug and the drug quality to be sold. Further, said owners agreed upon distinctive markers for the drug owner, i.e., an orange cap, a black cap, an NBA logo, etc. Moreover, the drug organization within the residential project was such that chores, responsibilities and duties were distributed amongst the members of the organization such as runners, cookers, sellers, and enforcers. The evidence further showed that selling in the different drug points was a coordinated effort since shifts were provided in order for the selling to take place. Finally, the drug owners set a coordinated effort providing the required security and protective measures around the drug points preventing robberies within the residential neighborhood avoiding police investigations and further established a communications system amongst the members of the organization to control the inflow and outflow of the vehicles into Los Alamos.

As to the overlapping requirement, the record shows that overlap exists "where a conspiracy is marked by the pervasive involvement of a single core conspirator or hub character". United States v. Rivera-Ruiz, 244 F.3d at 268. The evidence showed that the defendants performed several functions and services during the duration of the conspiracy, i.e., drug point owner and stashing weapons for the protection of the drug points while at some other point in time performing as a runner for other coconspirators and cooking crack cocaine for other co-defendant; also co-defendants who were point owners performed as their own enforcers and also enforced for other coconspirators including disciplining those who did not obey the rules set by the different drug point owners at their meetings.[4]

---

[4]Co-defendant Jose Rivera Calderon in his Rule 29 submittal (Docket No. 430) accepts that he was identified as the co-defendant who sold marihuana using the NBA logo. He denies there was any proof as to enforcers at his drug point nor the use of weapons. This particular matter is left for sentencing purposes as well as to the drugs attributed personally or handled by Rivera Calderon or that amount of drugs which may have been foreseen by him. U.S. v. Colon-

Solis, 354 F.3d 101, 103 (1st Cir. 2004). Rivera Calderon alleges that there is no proof of overlap or interaction amongst the co-defendants. This Opinion holds the contrary with specific references to the record even of purchasing of weapons for the benefit of all drug points. Rivera Calderon alleges that there is no interaction as to him but the law of conspiracy does not require interaction as to all conspirators. "[I]n a unitary conspiracy it is not necessary that the membership remain static ... or that a given member knows all his fellow coconspirators." United States v. Sepulveda, 15 F.3d 1161, 1191 (1st Cir.1993) (citations omitted). Most critically as to the argument of co-defendants that there was no interaction as to him is, "the fact that every defendant did not [have to] participate in every transaction [interaction] necessary to fulfill the aim of their agreement does not transform a continuing plan into multiple conspiracies." United States v. Drougas, 748 F.2d 8, 17 (1st Cir.1984). Finally, this co-defendant does not deny in its submittal that he did not sell marihuana at Los Alamos as was identified by the conspirator Rivera Santiago. The evidence of interaction, overlap, communications, common protection, common enforcement among other members of the drug conspiracy at Los Alamos is strong as described herein in this Opinion. The Rule 29 motion at Docket No. 430 as to Jose Rivera Calderon is **DENIED**.

Luis D. Rosario Rivas makes similar arguments as to those of Jose Rivera Calderon at his Rule 29 request (Docket No. 25). He also alleges that there was no common interaction or, overlap as to him, But the law does not require that all coconspirators participate in all transactions [or interactions of the conspiracy]. United States v. Drougas, 748 F.2d at 17. This co-defendant was principally identified as having a drug point of cocaine and crack in 1998 with green dots as an identifying marks. (See Co-defendant's Rule 29 motion at Docket No. 425, ¶ 13.) Luis D. Rosario Rivas as stated herein was an enforcer for his own drug point as well as for others. He himself had interaction and overlap. (*See* pag. 5 in this Opinion and Order). Other pertinent evidence described in this Opinion demonstrated common security plans to avoid robberies at the drug points, common purchase of weapons to protect the members of the conspiracy, and numerous overlap and interaction as stated herein as to others co-defendants in the conspiracy. The Rule 29 motion of Luis D. Rosario Rivas at Docket No. 425 is **DENIED**.

Jesus Pomales Pizarro alleges at his Rule 29 motion filed at Docket No. 427, that he was not identified as a member of the conspiracy. However, he clearly was properly identified as a purchaser of weapons together with Leonardo Rivera and stashing them in vehicles and apartments in benefit of the conspiracy at Los Alamos . (*See* page 6 in this Opinion and Order). Further, co-defendant Leonardo Rivera was a runner for both Armando Valdes and Luis Rodriguez Gonzalez and cooked crack cocaine for Jesus Pomales Pizarro. Jesus Pomales Pizarro therefore used several co-defendants that were also used in the conspiracy, to wit, members who served as runners for other coconspirators. Pomales Pizarro is himself deeply involved in "overlaps" and "interaction". His Rule 29 submittal (Docket No. 427) is **DENIED**.

Leonardo Rivera Torres also filed a Rule 29 motion for acquittal (Docket No. 428). He adopted the motion of acquittal filed by Luis Rosario Rivas which has been denied herein. The motion admits that he was identified by a conspirator, Jesus Raphael Rivera, a/k/a Raphel, as the owner of the NBA marihuana retail packages sold for $12.00 (Docket No. 428, ¶ 4). Further, in an automobile where weapons and bullets were hidden in support of the conspiracy a bullet shell

Therefore, the Court holds that the Government has met its burden showing sufficient evidence at Trial which was evaluated by the trier of facts concluding that co-defendants were participants in a single conspiracy from 1995 through 2003 to distribute narcotics at Los Alamos Housing Project. Consequently, the Motions for Acquittal under Rule 29(c) filed by all appearing defendants at Docket Entry Nos. 425, 427, 428, and 430 are hereby **DENIED**.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico this 22nd day of September 2005.

S/DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE

---

had his fingerprints (Docket No. 428, ¶ 5). The auto, although physically located at Quintas del Rey Project, had been moved there but the weapons were related to the drug conspiracy at Los Alamos. (The evidence must be examined in the light most favorable to the verdict. Glasser v. U.S., 315 U.S. 60 (1942); United States v. Hernandez, 146 F.3d at 32.)) Finally, at the very least the record shows as described in this Opinion and Order that Leonardo Rivera and Jesus Pomales Pizarro purchased weapons for the benefit of the Los Alamos conspiracy and stashed them in vehicles and apartments. (*See* pag. 6, this Opinion and Order). Leonardo Rivera was a runner for co-conspirator Armando Valdes and Luis Rodriguez Gonzalez as stated herein at page 7, and a cooker of crack cocaine for Jesus Pomales Pizarro. Therefore, "interaction" and "overlap" as to him is clearly met. Co-defendant states that the evidence is not clear that he joined the Los Alamos conspiracy. This Opinion and Order suggest the contrary. Co-defendant states that the evidence is not clear as to him joining the conspiracy. The Court disagrees. He was clearly identified as a drug owner of marihuana who also was a runner for various co-defendants and a crack cocaine cooker for the members of the conspiracy at Los Alamos (*See* p. 5-7 of this Opinion and Order.) Evidence of joining the conspiracy can be proven even by reasonable inferences. U.S. v. Echeverri, 982 F.2d at 679; but this case contains in the record more than mere inferences as described in this Order. Consequently, Leonardo Rivera's Rule 29 (c) motion for acquittal is **DENIED**.