**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Luis Daniel Rosario-Rivas,<br><br>Defendant. | **Criminal No. 03-00294(GMM)** |

<u>**OPINION AND ORDER**</u>

Pending before the Court is Luis Daniel Rosario-Rivas' ("Defendant") *Defendant's Pro Se Motion for Imposition of a Reduced Sentence, Pursuant to the First Step Act of 2018, Enacted December 21, 2018, Under Section 404 of the Act* ("Third Motion to Reduce Sentence") (Docket No. 766) and *Reply for Rosario-Rivas' Motion for Sentence Reduction under Section 404 of the First Step Act of 2018* ("Reply to Opposition to Third Motion to Reduce Sentence"). (Docket No. 775). For the reasons stated herein, the motions are **DENIED**.

## I.    RELEVANT PROCEDURAL BACKGROUND

On March 14, 2005, Defendant was found guilty of one (1) Count of conspiracy to possess with intent to distribute at least five (5) kilograms of cocaine, fifty (50) grams of cocaine base, one (1) kilogram of heroin, and one hundred (100) kilograms of marihuana pursuant to 21 U.S.C. § 846 and 841(a)(1). (Docket No. 508).

Criminal No. 3:03-00294(GMM)
Page -2-

Prior to sentencing, the Probation Office produced the Presentence Investigation Report ("PSR") to assist the Court at sentencing.[1] The PSR provides that Defendant's offense level computation yielded a total offense level of 43. (Docket No. 494 ¶¶ 25-32). Defendant's base offense level of 38 was increased by two (2) points for possession of a firearm during a drug trafficking conspiracy, and then by another four (4) points due to his leadership role in the offense. (Id. ¶¶ 27-38); *see also* U.S.S.G. §§ 2D1.1; 3B1.1(a). Although his base offense level was calculated to be 44, the Sentencing Table Application Notes provide that any offense level value higher than 43 shall be treated as an offense level of 43. (Id. ¶ 32); *see also* U.S.S.G. § 2D1.1.

Defendant's criminal history computation rendered eight (8) criminal history points, amounting to a Category IV Classification. (Id. ¶ 37). Defendant amassed eight (8) criminal convictions since 1992, including multiple weapons law violations, transit infractions, vehicular theft, armed robbery, two (2) counts of attempted murder of a police officer, and a prison escape attempt while released under furlough. (Id. ¶ 34). Furthermore, he was charged and arrested for, among other things, intent to distribute heroin and cocaine; possession of drug paraphernalia; two (2) counts of First-Degree Murder; three (3) counts of

---

[1] The PSR applied the November 1, 2004 Edition of the United States Sentencing Guidelines. (Docket No. 494 at 12).

Criminal No. 3:03-00294(GMM)
Page -3-

violation to the local Weapons Law, Article 6; three (3) counts of violation to local Weapons Law, Article 8; Robbery; criminal possession of a weapon; and menacing under indictment. (Id. ¶¶ 38-40).

At sentencing, Defendant faced a statutory minimum term of 10 years imprisonment with a United States Sentencing Guidelines ("Guidelines") recommended range of 360 months to life. (Docket No. 494 ¶¶ 42-43). Considering his prior convictions and conduct, on October 11, 2005, U.S. District Judge Daniel R. Domínguez sentenced Defendant to life in prison with five (5) years of supervised release should he ever leave custody. (Docket No. 508 at 2-3).

On November 14, 2005, Defendant appealed his conviction and sentencing to the First Circuit Court of Appeals. (Docket No. 536). The First Circuit affirmed the District Court's judgment on August 26, 2009. (Docket No. 629); see also United States v. Rivera Calderon, 578 F.3d 78, 101 (1st Cir. 2009).

On September 20, 2010, Defendant filed *Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside Sentence by a Person in Federal Custody*. (Docket No. 638). The Court denied this petition on September 20, 2013. (Docket No. 683). Defendant then, on December 2, 2014, filed his *Pro Se Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(2)* ("Motion to Reduce Sentence"). (Docket No. 697). The United States submitted its *Opposition to*

**Criminal No. 3:03-00294(GMM)**
**Page -4-**

*Defendant's Request for Reduction of Sentence* ("Opposition to Motion to Reduce Sentence") arguing that Defendant's prior offenses, relevant conduct, and Criminal History Category of IV, deemed such a sentence reduction inappropriate. (Docket No. 734). The Court denied Defendant's Motion to Reduce Sentence on July 19, 2016. (Docket No. 737). On August 17, 2016, Defendant filed *Defendant's Pro Se Motion for Reconsideration of the Order Denying Defendant's Motion to Reduce his Sentence, Pursuant to the Retroactive Application of Amendment 782 to the United States Sentencing Guideline, under 18 U.S.C. Section 3582(c)(2)* ("Second Motion to Reduce Sentence"). (Docket No. 742). The Court denied the Second Motion to Reduce Sentence on August 30, 2017. (Docket No. 756).

On October 25, 2019, Defendant filed the instant Third Motion to Reduce Sentence. (Docket No. 766). On April 27, 2020, the United States filed its *Opposition to Motion for Sentence Reduction Based on First Step Act of 2018* ("Opposition to Third Motion to Reduce Sentence"). (Docket No. 773). On August 19, 2020, Defendant, now represented by an appointed Federal Public Defender, filed his Reply to Opposition to Third Motion to Reduce Sentence. (Docket No. 775). On January 5, 2021, the Government filed its *Surreply to Motion for Sentence Reduction Based on First Step Act of 2018*. (Docket No. 788). Therein, the Government reiterated that "Defendant's life imprisonment sentence was — and remains — a

**Criminal No. 3:03-00294(GMM)**
**Page -5-**

reasonable sentence that is within the applicable guidelines and has a plausible rationale and defensible result." (Id. at 7).

## II.   LEGAL STANDARD

In 2010, Congress passed the Fair Sentencing Act ("FSA") to, among other things, augment the quantities of crack cocaine required to activate the imposition of mandatory minimum sentences. *See* FSA of 2010, Pub. L. No. 111-220, 124 Stat.2 2372 (2010). Section 2 of the FSA amended the penalty scheme for crack cocaine offenses to, among other things, increase the amount of crack cocaine necessary to trigger a ten-year mandatory minimum sentence from 50 to 280 grams. Id., *see also* 21 U.S.C. § 841(b)(1)(A)(iii).

Previously, the FSA did not retroactively apply to defendants sentenced prior to August 2010. *See* Dorsey v. United States, 567 U.S. 260, 264 (2012). However, on December 21, 2018, Congress passed the First Step Act of 2018 ("First Step Act"), which provides, among other things, that inmates charged with offenses subject to statutory penalties that were later modified by sections 2 or 3 of the FSA could petition the court for a sentence reduction. *See* First Step Act, Pub. L. 115-391, § 404, 132 Stat. 5194, 5222 (2018).

To be eligible for a possible sentence reduction under the First Step Act, a Defendant must (1) have violated a federal

**Criminal No. 3:03-00294(GMM)**
**Page -6-**

criminal statute whose penalties were modified by sections 2 or 3

of the FSA prior to August 3, 2010; and (2) have a sentence that

is not already imposed or reduced within the parameters set forth

by sections 2 or 3 of the FSA. Pub. L. 115-391, § 404. However,

even if the First Step Act applies, "[n]othing in this section

shall be construed to require a court to reduce any sentence

pursuant to this section." Id. § 404(c).

The United States Supreme Court has reiterated that district

courts have discretion in reviewing a First Step Act motion. *See*

Concepción v. United States, 597 U.S. 481, 502 (2022)[2] (A district

court need not "be persuaded by the nonfrivolous arguments raised

by the parties before it, but it . . . [must] consider them.");

*see also* United States v. Candelaria-Silva, Criminal No.  95-029-

15 (ADC), 2022 WL 5240585, at *1 (D.P.R. Oct. 6, 2022), aff'd, No.

22-1888, 2023 WL 11693413 (1st Cir. Dec. 1, 2023); United States

v. Rodriguez-Rodriguez, 686 F. Supp. 3d 58, 61 (D.P.R. 2023).

In considering a reduction in sentence, a court "may reduce

the term of imprisonment, after considering the factors set forth

in section 3553(a) [of the Guidelines] to the extent that they are

applicable." 18 U.S.C. § 3582(c); *see also* Concepcion, 597 U.S. at

495 (stating that the First Step Act does not controvert the "well-

---

[2] This decision was issued while Defendant's motion was pending.

**Criminal No. 3:03-00294(GMM)**
**Page -7-**

established sentencing practice" of weighing the section 3553(a)

factors).


### III. DISCUSSION

Defendant contends that pursuant to section 404 of the First

Step Act and considering Defendant's rehabilitation efforts while

incarcerated, the Court should grant his request for a reduction

in sentence. (Docket No. 775). The United States, conversely,

argues that "a defendant should not [be] able to leverage the First

Step Act to seek a more lenient sentence than would be handed a

similarly situated offender today." (Docket No. 773 at 5). The

United States further contends that the Court should not grant

Defendant's request for a sentence reduction, since Defendant

received a sentence within the range that would be imposed onto an

analogous offender being sentence today. The Court considers these

arguments below.

A.    Defendant's offense is covered by the First Step Act

As a preliminary matter, the Court must first determine if

the Defendant is eligible for a reduced sentence under section 404

of the First Step Act. As previously stated, a defendant is

eligible for a sentence reduction pursuant to section 404 of the

First Step Act if his offense of conviction was modified by

sections 2 or 3 of the FSA, and if his offense of conviction was

**Criminal No. 3:03-00294(GMM)**
**Page -8-**

committed before August 3, 2010. First Step Act § 404(a). "A crack cocaine offense that triggers a mandatory minimum penalty is a "covered offense" eligible for a sentence reduction under the First Step Act." United States v. Castillo-Torres, No. CR 4-414-4 (RAM), 2024 WL 1672281, at *2 (D.P.R. Apr. 18, 2024) (*citing* Terry v. United States, 593 U.S. 486, 495 (2021)).

Here, the Defendant was charged and convicted of an offense involving crack cocaine, and the offense of conviction was prior to the established date. Defendant's cocaine offenses also triggered a 10-year mandatory minimum pursuant to 21 U.S.C. § 841(b)(1)(ii). *See* Docket No. 494 at 12. Furthermore, Defendant avers, and the Government does not dispute, that he is eligible. Thus, the Court concludes that Defendant's crack cocaine offense falls under the First Step Act.

B. Defendant's original sentence as compared to his adjusted sentence under the First Step Act

The Court reviews the adjusted Guidelines range to determine if it shall exercise its discretion to reduce Defendant's sentence. *See* Concepción, 597 U.S. at 498 ("[T]he First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense. That Guidelines range 'anchor[s]' the sentencing proceeding.") (internal quotations omitted).

**Criminal No. 3:03-00294(GMM)**
**Page -9-**

At sentencing, Defendant received a life sentence of imprisonment upon that court's consideration of the mandatory minimum sentence based on the drug quantity and the United States Sentencing Guidelines' factors. As relevant here, the sentencing court found Defendant responsible for five kilograms of heroin, five kilograms of cocaine, fifty grams of crack cocaine, and one hundred kilograms of marihuana. *See* Rivera Calderon, 578 F.3d at 101. These drug quantities were affirmed by the First Circuit on appeal. Id. Specifically, the Appellate Court concluded that there was sufficient credible evidence to find that such quantities were attributable to Defendant. Based on the drug equivalency tables, which assigned non-marihuana drugs a marihuana-based value, the sentencing court found Defendant responsible for 6,305 kilograms of marihuana. This amount resulted in a base offense level of 34. The base offense level was increased by two levels for Defendant's possession of firearms while part of the drug conspiracy, and was adjusted upward another four levels for his being a leader or organizer of a criminal activity that had at least five participants or was otherwise extensive. The sentencing court thus reached a total offense level of 40 with a criminal history category of IV, which yielded a sentencing range of 360 months to life. This determination was affirmed by the First Circuit. *See* Rivera Calderon, 578 F.3d at 105.

**Criminal No. 3:03-00294(GMM)**
**Page -10-**

The Court now calculates the sentence recommendation Defendant would receive if he was sentenced for the same offense today. Notably, "[t]he Supreme Court clarified in Concepción v. United States that courts have complete discretion to consider any intervening changes of fact or law between the original sentencing and the present application, apart from constraints established by Congress or the Constitution." Rodriguez-Rodriguez, 686 F. Supp. 3d at 61 (*citing* Concepción, 597 U.S. 481). Accordingly, the Court applies the current Guidelines in its review of the Third Motion to Reduce Sentence. Applying the Guidelines as modified by the FSA and the First Step Act, Defendant would be subject to a sentence range of 324 to 405 months of imprisonment.[3]

## C. Section 3553(a) Factors

Section 3553(a) of the Guidelines provides the factors a court must consider when imposing a sentence. These factors include, but are not limited to, "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need to impose a sentence that "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just

---

[3] Defendant still has a level IV Criminal History Category. *See* § 4A1.1. Defendant's base offense level following the FSA and First Step Act would be 32. *See* U.S.S.G. §§ 2D1.1(C). Defendant would still be subject to a two (2) point enhancement for possession of a firearm during a drug trafficking conspiracy and a four (4) point enhancement for his leadership role in the offense. *See* U.S.S.G. §§ 2D1.1(B)(1), 3b1.1(a). Thus, Defendant's adjusted offense level would amount to 38. *See* 2023 U.S.S.G. 5 Pt. A.

Criminal No. 3:03-00294(GMM)
Page -11-

punishment for the offense;" "to protect the public;" and "to provide the defendant with needed education or vocational training . . ." 18 U.S.C. § 3553 (a). The Court, having weighed these factors, concludes that a sentence reduction is not justified in this case.

The Court acknowledges and commends Defendant's efforts taken in furtherance of his self-improvement. Notably, Defendant avers that while incarcerated he "renounced drugs, rehabilitated, and completed employment training courses" as well as passed a General Education Development test ("GED"). (Docket No. 775 at 6). These efforts are estimable and weigh in favor of a reduction. *See* Concepción, 597 U.S. at 498.

Nevertheless, Defendant was charged with a serious crime involving significant quantities of Schedule I and Schedule II controlled substances. The Court further notes, that the First Circuit highlighted that "[t]he court was conservative in assigning a drug quantity to Rosario. His crack dealings alone could have placed him at a base offense level of 38, and the court recognized the abundance of available evidence." U.S. v. Rivera Calderon, 578 F.3d at 102.

Moreover, his prior offense record reflects a repeated engagement in dangerous criminal activity that poses a threat to the public. Particularly, though he was not charged with murder, extensive evidence of his participation in two murders was admitted

during trial and the First Circuit validated such evidence stating
"the murders were relevant to the conspiracy charges brought
against Rosario and the other appellants, and not marginally so,
as Rosario would have us believe. As previously noted, the murders
were charged as overt acts in furtherance of the conspiracy and
helped establish not only the existence of a conspiracy but also
Rosario's connection to it." U.S. v. Rivera Calderon, 578 F.3d at
98.

The record further demonstrates that during his period of
detainment, Defendant incurred in at least seven disciplinary
infractions,[4] signaling an ongoing pattern of misconduct weighing
against a finding of rehabilitation. Thus, these factors all
disfavor the granting of a sentence reduction in this case.

Weighing these considerations and the record before it, the
Court finds that a reduced sentence in this case would not reflect
the seriousness of the offense, promote respect for the law,
provide just punishment, or protect the public. As such the Court

---

[4] On or around January 12, 2004, while detained at the Metropolitan Detention
Center in Guaynabo, Puerto Rico, Defendant was sanctioned for violating code
307, "refusing to obey an order," and code 330, "being unsanitary or untidy".
(Docket No. 294 ¶ 41). On or around January 20, 2004, Defendant received a
sanction for violating code 224, "assaulting without serious injury." (Id.).
Between December 2003 and December 2015, Defendant was sanctioned at the Federal
Correctional Complex in Coleman, Florida for violating code 330, "being
unsanitary or untidy;" code 307, "refusing to obey an order;" code 224,
"assaulting without serious injury;" code 310, "being absent from assignment;"
and code 113, "possessing drugs/alcohol."  (Docket No. 788-1 at 1).

**Criminal No. 3:03-00294(GMM)**
**Page -13-**

declines to exercise its discretion to reduce Defendant's

sentence.

### IV. CONCLUSION

For the aforesaid reasons, the Court **DENIES WITH PREJUDICE**[5]

Defendant's Third Motion to Reduce Sentence and Reply to Opposition

to Third Motion to Reduce Sentence.

IT IS SO ORDERED.

In San Juan, Puerto Rico, July 19, 2024.


                                    s/Gina R. Méndez-Miró
                                    GINA R. MÉNDEZ-MIRÓ
                                    UNITED STATES DISTRICT JUDGE

---

[5] Section 404(c) of the First Step Act provides that "[n]o court shall entertain a motion made under this section to reduce a sentence ... if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." Pub. L. 115-391, § 404(c).